Harpeii, J.
The case will necessarily tarn on the first ground oí the motion, “that the bond o*n which the action was brought was not assignable at law, and that the plaintiffs could not sue on it in their own names.”
This must depend on our Act of Assembly authorizing the assignees of bonds and notes not negotiable, t° sue in their own names. The word ‘bond’ in its most extensive sense, certainly includes every sort of bond, whether to secure the payment of money or the performance of covenants. But in a restricted and more popular sense, it is commonly understood to be specially for securing the payment of money. In this latter sense alone, I think the legislature must have intended to use it in the act in question.
If there be any ambiguity in a statute, according to Lord Coke’s rule for the construction of statutes, we are to consider the mischief for which the common law did not provide, and the remedy which the legislature has devised for the mischief. The fact is notorious that it has long been an usual practice to assign bonds for the payment of money — selling them or transferring them in payment of debts. There has been no such practice with respect to any other than money bonds. An obvious inconvenience, recited in the act, was, that the assignment was not recognized at law, and the holder was compelled either to go into equity, or sue in the name of the original obligee. We learn from the case of Parker v. Kennedy, 1 Bay. 392, that this was more particularly the case in our state, for some time before the passing of the act. We learn from that case (if the fact were not otherwise notorious) that bonds to the amount of several hundred thousand pounds, had been passed away from man to man, in a great variety of transactions, since the peace of 1783 — that in sales and purchases, they had served as a kind of circulating medium — and that in these transfers, the usual mode of passing them was by a blank endorsement on the hack, of the bond. So firmly was this practice established, that in that case, it was sought to make the assignor *377 of the bond liable as the indorser of a negotiable paper. All this of coarse related only to money bonds, and to this state of things, the act of the legislature was intended to apply. '
I think this view is strengthened by the terms of the act itself. It recites that “whereas many inconveniences have been experienced from the assignees of bonds, notes or bills, not payable to order, or not negotiable, being compelled to bring suits for the recovery of monies due thereon, in the name of the obli-gees of said bonds, or the payees of said notes or bills, &c.” Bonds are associated with notes or bills', and I am not aware that these have been ever understood to relate to any thing else than the payment of monies certain. The suits spoken of are for the recovery of monies. If a party is- entitled to unliquidated damages for a breach of covenant, it would be an unusual and incorrect method of expression to say, that there is money due on that covenant.
The inconveniences that would otherwise result, is another reason in favour of this construction of the act. Where a sum certain is due, and an obligation is given for it, no greater inconvenience can result from its being transferred, than in the case of negotiable paper. But the policy of the law is against the transfer of litigation. A bond may be conditioned for performing the duties of agent or overseer, to keep the peace, to abstain from committing trespasses, &c. Is it to be supposed the law contemplated the transfer4 of the right of aetion for damages occasioned by a mere breach of personal duty? Part of the condition oí this bond is, that besides accounting, &c. the principal obligee shall, “in other respects, behave and demean himself honestly and faithfully touching said guardianship.” Suppose the guardian had neglected the plaintiffs’ education, and they were entitled to damages on this account; is it to be supposed that the plaintiffs could transfer their right of action for these damages ?
The act of 1789, (IBrev. Dig. 33-1,) directs that administrators shall gi.ye bond, payable to the Ordinary, *378 which maybe sued from time to time, by any person by the breach thereof. Are these bonds em~ braced by the act of 1798 ? They must be, if that act i® entitled to embrace all bonds; yet by such a construction, the purposes of the act of 1789, would be in a great measure, defeated. That act intended, that any person injured, might from time to time, sue of course, in the name of the Ordinary. If the legal title to the bond might be vested in one creditor, or one ■distributee by the Ordinary’s assignment, the remedy of the rest would be defeated. So in the case before us, of the guardianship bond, if it had been assigned to one of the plaintiffs. Indeed, if it might be assigned to the plaintiffs, under the act of 1798, it might have been assigned to any one else. The purposes of the law, certainly ■ require that such bonds should remain in the hands of the proper officer, to be sued in his name, by any one injured by a breach of their condition. I know of no other reasonable or practicable construction which can be given to the act of 1798, but to restrict it to bonds for the payment of ■money certain.
It is not necessary to consider the other grounds of the motion, but on these I incline to agree with the presiding Judge.
The motion is granted.
Johnson & O’Neall, Js. concurred.